UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WATERMARK GRANITE LA QUINTA, LLC *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY, <br><br> Defendant. | Civil No. 10cv1011-L(CAB) <br><br> **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |

In this insurance action, real estate developers and insureds Watermark Granite La Quinta, LLC and Innovative Communities, Inc. ("Plaintiffs") filed an action against their insurer, Defendant American International Specialty Lines Insurance Company, to recover insurance premiums paid in relation to two failed projects. The court has subject matter jurisdiction pursuant to 28 U.S.C. Section 1332(a)(1). Defendant filed a motion to dismiss the second amended complaint. Plaintiffs opposed and Defendant replied. For the reasons which follow, Defendant's motion is **GRANTED**.

According to Plaintiffs, prior to commencing construction on the projects, they obtained policies to insure the construction and sale of homes, primarily against claims of defective construction by third party purchasers. (Opp'n at 1; Second Am. Compl. ("Compl.") at 3.) They took out Policy No. BE-9745437, effective from December 10, 2004 to October 7, 2007, for the

Mesa Verde project for construction of 200 residences and related infrastructure. (Compl. at 4.) They took out Policy No. BE-7412308, effective from May 1, 2005 to April 14, 2008, for the Watermark project for construction of 250 condominiums and related infrastructure. (*Id*. at 5.) In exchange for coverage in the aggregate amount of $10 million on each project, Defendant demanded and received from Plaintiffs Advance Premiums totaling approximately $1.3 million. (*Id*. at 4 & 5.)

Due to the deteriorating real estate and credit markets, Plaintiffs' projects were not completed. (Opp'n at 1.) With respect to the Mesa Verde project, Plaintiffs completed the infrastructure work and built and sold 64 residences. (Compl. at 4.) The remaining 136 finished lots were sold to Centex Homes. (*Id*.) As to the Watermark project, they almost completed the infrastructure and eight model units before losing financing and the lender taking possession of the property. (*Id*. at 5.)

Subsequently, Plaintiffs informed Defendant that the projects did not reach the scope of construction anticipated when the insurance policies were issued. Plaintiffs maintain that the actual amount due as Advance Premium was based on Defendant's own internal formula and calculation of the risk it was assuming for the construction and sale of a specific number of homes. (Opp'n at 1; *see also* Compl. at 4 & 5.) They demanded that Defendant audit the premiums in light of the failed projects and return a portion of the premiums paid, representing the difference between the premiums paid and earned. (Compl. at 5 & 6.) After Defendant refused to audit the premiums or return any of them, Plaintiffs filed the instant action. (*Id*. at 6-7.)

Plaintiffs asserted three causes of action styled as unjust enrichment, conversion, and rescission. The unjust enrichment and rescission claims are based on the theory that the insurance policies were executed pursuant to the mutual material mistake of fact "that the homes, lots and infrastructure would be completed as planned and would require the coverage to be provided under each of the respective Policies." (Opp'n at 6; *see also id*. at 10; Compl. at 7.) Plaintiffs also base the claims on failure of consideration, "the parties based the entire consideration for the agreement on their mistaken belief that the number of homes provided for

in the policy were actually going to be constructed and the gross sales were going to reach certain amounts. Without that happening of a future event, the policies were stripped of any true consideration." (Opp'n at 10; *see also* Compl. at 4.) Plaintiffs claim that they are "entitled to recover premiums that [they] paid for insurance that was never rendered because the risk of exposure never existed." (Opp'n at 2.) The conversion claim is based on the theory that Defendant wrongfully declined to return any portion of the premiums when asked by Plaintiffs. (Compl. at 8.)

Defendant moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss all three claims and strike pursuant to Rule 12(f) the request for punitive damages. A Rule 12(b)(6) motion tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory. *Shroyer v. New Cingular Wireless Serv., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (internal quotation marks and citation omitted); *see Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law"). Alternatively, a complaint may be dismissed where it presents a cognizable legal theory yet fails to plead essential facts under that theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984); *see also Shroyer*, 622 F.3d at 1041. "In addition, to survive a motion to dismiss, a complaint must contain sufficient factual matter to state a facially plausible claim to relief." *Shroyer*, 622 F.3d at 1041, citing *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009). In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). Legal conclusions need not be taken as true merely because they are couched as factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. Fed. Deposit Ins. Corp.*, 139 F.3d 696, 699 (9th Cir. 1998).

Defendant argues that the unjust enrichment and rescission claims should be dismissed because Plaintiffs cannot show a mutual mistake as a matter of law. California substantive law

applies in this diversity action. *Intr-Plex Technol., Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007). California Civil Code Section 1577 defines a mistake of fact:

> Mistake of fact is a mistake, not caused by the neglect of a legal duty on the part of the person making the mistake, and consisting in:
> 1. An unconscious ignorance or forgetfulness of a fact past or present, material to the contract; or,
> 2. Belief in the present existence of a thing material to the contract, which does not exist, or in the past existence of such a thing, which has not existed.

Because Plaintiffs' mistake theory is based on the anticipation about how the projects would turn out in the future, there was no mistake about a past or present fact, and therefore no mistake of fact.

Plaintiffs rely on *F.P. Cutting Co. v. Peterson*, 164 Cal. 44 (1912) for the proposition that mistake regarding a future event is sufficient to support unjust enrichment or rescission. *F.P. Cutting* holds that when a contingency, which both parties anticipated to happen after contract formation and which was expressly incorporated in the contract, does not occur, the court may reform the contract so as to conform it to the parties' mutual intent at the time of contract formation. The parties in *F.P. Cutting* entered into a futures contract whereby the plaintiff, a fruit and vegetable canner, sold a quantity of canned tomatoes to the defendant, a wholesale grocer. They agreed that if the price specified in the contract was higher than the price to be set by the California Fruit Canneries Association's price list at the beginning of the season, then the association's price would govern the contract. The intent was to protect the defendant from paying more for the tomatoes than the association's opening price. However, contrary to the established practice, the association did not publish a price list at the beginning of the season, although its opening prices were ascertainable from the market. The court interpreted the contract provision referencing the price list as referring to the market prices to be fixed by the association at the beginning of the season, regardless of the fact that they were not published in a price list.

*F.P. Cutting* is inapposite because, unlike here, the association prices were an assumption expressly included in the agreement. "Absent evidence that the existence of a future contingency . . . is an assumption of the contract . . . the defense of mistake of fact must be

premised on past or present facts about which the parties are ignorant or mistaken." *Mosher v. Mayacamas Corp.*, 215 Cal. App. 3d 1, 5 (1989). Plaintiffs do not argue that the alleged mistake is premised on a past or present fact but on Plaintiffs' future success in completing the projects. To state a claim on this basis, the future contingency must be an assumption of the contract, as was the case in *F.P. Channing*.

The insurance policies show that the scope of completion of Plaintiffs' projects was not an assumption. (Decl. of Sanford Kingsley Exh. A & Am. Exh. B.) Generally, a court may not consider material beyond the complaint in ruling on a Rule 12(b)(6) motion. *Intri-Plex Tech.*, 499 F.3d at 1052; *see also* Fed. R. Civ. Proc. 12(d). However, the court may take judicial notice of and consider "materials incorporated into the complaint or matters of public record." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) (citations omitted). The doctrine of incorporation by reference includes "documents in situations where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance." *Id*. (citations omitted). Because the policies and their contents are alleged in the operative complaint (Compl. at 3-5), Plaintiffs do not contest their authenticity, and they did not object, the court takes judicial notice of them.

Plaintiffs alleged that the Advance Premiums were calculated based on the planned scope of each project. (*See, e.g.,* Compl. at 4 ("The amount of Advance Premium . . . was based on the anticipated construction and sale of a total of 200 single family homes.") & 5 (same re: policy for the Watermark project).) These allegations are contradicted by the unambiguous language of the policies, which state that the Advance Premium was not computed based on any rate or formula, but was a flat rate. (Decl. of Sanford Kingsley Exh. A & Am. Exh. B at AISLIC 0001 & 0075 (Declarations, Item 6)). Plaintiffs did not pay any other premiums for the policies. (*Id.*) The court need not assume the truthfulness of allegations which are contradicted by judicially noticeable documents. *Branch v. Trunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1127 (9th Cir. 2002); *Intri-Plex Tech.*, 499 F.3d at 1053. The policy provisions that none of Plaintiffs' premiums were computed

1 but were flat, negate Plaintiffs' premise that the scope of project completion was a future
2 contingency the parties assumed in the calculation of the premiums.

3       Plaintiffs' premise is further precluded by the provision which renders the premiums non-
4 refundable. Each policy provides:

> When this policy expires or if it is cancelled, we will compute the earned premium for the time this policy was in force. **If** this policy is subject to audit adjustment, the actual exposure base will be used to compute the earned premium. If the earned premium is greater than the Advance Premium, you will promptly pay us the difference. If the earned premium is less than the Advance Premium, we will return the difference to you. But **in any event, we will retain the Minimum Premium as shown in Item 6 of the Declarations for each twelve months of the Policy Period.**

10 (Decl. of Sanford Kingsley Exh. A & Am. Exh. B at AISLIC 0065 & 0140 (emphases added).)
11 In Plaintiffs' policies, the Advance Premium and the Minimum Premium are co-extensive. (*Id*.
12 at AISLIC 0001 & 0075 (Declarations, Item 6).) Accordingly, Defendant was entitled to retain
13 all of the premiums paid by Plaintiffs, regardless of the actual completion of the projects and the
14 resulting exposure to risk. Because the policies preclude Plaintiffs' argument that the future
15 contingency of the completion of the entire scope of the projects was an assumption included in
16 the contract, their contention that they can state a claim for unjust enrichment or rescission based
17 on mutual mistake regarding a future fact is rejected.

18       Alternatively, Plaintiffs argue that their inability to complete the projects, combined with
19 the premium provisions which were not dependent on the extent of completion, caused a failure
20 of consideration so as to warrant rescission or restitution. According to Plaintiffs, "insurance
21 was not provided for the vast majority of homes contemplated because the homes were never
22 built. Plaintiffs seek reimbursement of the advance premiums on the grounds the insurance
23 promised was never provided because the homes were never constructed." (Opp'n at 9.)

24       Specifically, Plaintiffs argue they alleged "that the policy endorsements [endorsement No.
25 6] are unenforceable because any enforcement would strip each and every policy of any
26 consideration." (Opp'n at 4.) Upon review of the second amended complaint, this does not
27 appear to be alleged and Plaintiffs provided no citation to the complaint in their opposition brief.
28 Moreover, the reference to endorsement no. 6 does not make sense in the context of this case. In

one policy, it is a "Chromated Copper Arsenate ("CCA") Exclusion Endorsement (Decl. of Sanford Kingsley Exh. A at AISLIC 0014), and in the other it is a "Continuing or Progressively Deteriorating Damages Endorsement" (*id*. Am. Exh. B at AISLIC 0085). The court therefore construes Plaintiffs' argument as referring to the provision in each policy for a non-refundable Minimum Premium, located at Section VI, Paragraph M in each policy. (*Id*. Exh. A & Am. Exh. B at AISLIC 0065 & 0140.)

Plaintiffs further argue that because this provision causes a failure of consideration, it should be set aside as unenforceable, and that "the original policy language as provided in Section IV(5)(b) controls and Defendant is obligated to conduct a premium audit and return any unearned premiums." (Opp'n at 4.) Upon a thorough review of both policies, the court is unable to locate a Section IV(5)(b). Plaintiffs provided no citation where the section could be found in the policy documents. Section IV of each policy pertains to Limits of Insurance and has no bearing on Plaintiffs' argument. (*See* Decl. of Sanford Kingsley Exh. A & Am. Exh. B, documents listed at AISLIC 0053-55 & 0128-130; *see also* 0009, 0017, 0023, 0028, 0089, 0097, 0101, 0111, 0120.) Moreover, the paragraphs of all sections in the policies are designated by capital letters and not numbers. The court therefore construes the argument to refer to Section VI., Paragraph M, the only policy provision pertaining to premiums. (*Id*. at AISLIC 0065 & 0140.) Section IV, Paragraph M is not the subject of any endorsements to the policies, but consists entirely of "original language." The court therefore further construes Plaintiffs' argument as attempting to excise the last sentence of Paragraph M, which provides, "But in any event, we will retain the Minimum Premium as shown in Item 6 of the Declarations for each twelve months of the Policy Period." (*Id*. at AISLIC 0065 & 0140.)

Plaintiffs' argument is based on the premise that "without any homes the policies are not worth anything more than the paper they are written on. Plaintiffs expressly and repeatedly allege that [Defendant] has failed to provide the coverage contemplated by the policies because there is nothing to insure." (Opp'n at 4.) This argument is negated by Plaintiffs' own allegations that they started the construction of both projects and in some cases sold completed homes and lots. Plaintiffs do not contend that they did not have the benefit of insurance

coverage for the portion of each project they completed. One therefore cannot reasonably infer based on the allegations in the complaint that Plaintiffs received nothing at all from Defendant in exchange for the premiums. The fact that the insurance coverage turned out to be less valuable to Plaintiffs than anticipated does not render the policies or their premium provisions unenforceable for lack of consideration.

> Any benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered, by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise.

Cal. Civ. Code § 1605 ; *see also Jara v. Suprema Meats, Inc.*, 121 Cal. App. 4th 1238, 1249 (2004) citing Cal. Civil Code § 1605. Accordingly, "the consideration need not necessarily be useful, and there is no requirement of adequacy to make the contract enforceable in an action at law." 1 B.E. Witkin, Summary of Cal. Law, Contracts § 140 (10th ed. 2005) citing Restatement (Second) of Contracts § 79(b) & cmt. c. Plaintiffs' contention that they are entitled to a refund of premiums based on failure of consideration is therefore negated by the allegations in the second amended complaint. Defendant's motion to dismiss the unjust enrichment and rescission claims is therefore **GRANTED**.

Last, Defendant argues that the conversion claim should be dismissed because Plaintiffs failed to allege a wrongful act to support it. Plaintiffs' theory of conversion is that Defendant's refusal to conduct an audit and refund the premiums constituted the requisite wrongful act. To establish a wrongful act, Plaintiffs must have had ownership, possession, or right to possession of the property in dispute. *See* Judicial Council of Cal. Civ. Jury Instr. No. 2100 (Spring 2011 Ed.). Plaintiffs' conversion claim is based on their argument that Defendants were not entitled to the premiums because of the mutual mistake of fact and failure of consideration. Because both arguments are rejected for reasons discussed above, Defendant's motion to dismiss the conversion claim is **GRANTED**.

Plaintiffs did not request leave to amend the complaint if the motion to dismiss is granted. Nevertheless, the court must consider whether a motion to dismiss should be granted with leave to amend. *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir.

2004). Rule 15 advises the court that leave to amend shall be freely given when justice so requires. Fed. R. Civ. P. 15(a). "This policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (internal quotation marks and citation omitted).

> In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962). Dismissal with prejudice and without leave to amend is not appropriate unless it is clear that the complaint could not be saved by amendment. *Id*. Based on the allegations in the second amended complaint and provisions of the insurance policies, it does not appear that Plaintiffs could amend the complaint.

Accordingly, Defendant's motion to dismiss is **GRANTED**. Its motion to strike the demand for punitive damages is **DENIED** as moot. The second amended complaint is **DISMISSED** without leave to amend.

**IT IS SO ORDERED.**

DATED: May 23, 2011

                                            M. James Lorenz
                                            United States District Court Judge

COPY TO:

HON. CATHY ANN BENCIVENGO
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL